UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS MAXWELL,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 07-5773 SC<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY <u>JUDGMENT</u> |

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment or Remand ("Motion").  Docket No. 8.  In opposition, Defendant Michael Astrue, Commissioner of Social Security, filed a Cross-Motion for Summary Judgment ("Cross-Motion"), and Plaintiff filed a Reply.  Docket Nos. 9, 10.  Plaintiff Thomas Maxwell ("Mr. Maxwell" or "Claimant") seeks an order awarding disability insurance benefits or remanding this case to Social Security for proper decision.  For the reasons set forth below, this Court DENIES Plaintiff's Motion and GRANTS Defendant's Cross-Motion.

**II.   BACKGROUND**

Mr. Maxwell was born on March 7, 1949, has a high school education, and worked as a furniture salesman.  Administrative

Record ("AR") at 60, 179. Mr. Maxwell underwent back surgery on October 3, 1995. Id. at 92, 104. He first applied for Disability Insurance Benefits on May 7, 1996. Id. at 151. From June to September 1998, Mr. Maxwell worked as an accounts manager for a cellular phone service. Id. at 152. In October 1998, Mr. Maxwell returned to work as a mattress salesman. Id. At his first disability hearing on May 12, 1999, the Administrative Law Judge ("ALJ") found Mr. Maxwell to be disabled from October 1, 1995 through January 28, 1998. Id. at 161. The ALJ found that, as of January 28, 1998, there had been medical improvement in Mr. Maxwell's condition, and that beginning in June 1998, Mr. Maxwell had the residual functional capacity for light work. Id. at 157.

Mr. Maxwell stopped working as a mattress salesman in July 1999 due to back pain. Id. at 183-85. On August 17, 1999, he reapplied for disability insurance benefits and was denied on November 21, 2000. Id. at 179-81, 276-82. Mr. Maxwell did not appeal the decision. Id. at 19. After that, he worked as a graveyard planning counselor and an admissions representative at a vocational school. Id. at 353, 363. He stopped working in July 2001 because his back went out. Id. at 353. On August 4, 2003, Mr. Maxwell had emergency surgery due to diverticulitis. Id. at 408, 561. The surgery performed was a sigmoid colectomy, which involved excising part of Mr. Maxwell's colon and stapling. Id. at 408-10.

On September 17, 2003, Claimant reapplied for disability insurance benefits alleging disability beginning January 1, 2002. Id. at 326. The application was denied initially and on

2

1  reconsideration. Id. at 290-93, 298-302. Claimant requested a
2  hearing, which was held before an ALJ on October 19, 2005. Id. at
3  303, 549-81. On May 16, 2006, the ALJ denied Mr. Maxwell's claim.
4  Id. at 15-24. This decision became final on November 1, 2007,
5  when the Appeals Council denied Mr. Maxwell's request for review
6  of the ALJ's decision. Id. at 10-12. On November 14, 2007, Mr.
7  Maxwell filed a complaint in this Court seeking review of the
8  ALJ's decision. Docket No. 1.

## III. LEGAL STANDARD

To qualify for disability benefits, a claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A). In making this determination, "an ALJ conducts a five step inquiry. 20 C.F.R. §§ 404.1520 & 416.920." Lewis v. Apfel, 236 F.3d 503, 508 (9th Cir. 2001).

> The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks in the second step whether the claimant has a severe impairment (i.e., one that significantly affects his or her ability to function); if so, the ALJ asks in the third step whether the claimant's condition meets or equals one of those outlined in the Listing of Impairments in Appendix 1 of the Regulations [20 C.F.R. §§ 404.1520(d) & 416.920(d)]; if not, then in the fourth step the ALJ asks whether the claimant can perform in his or her past relevant work; if not, finally, the ALJ in the fifth step asks whether the claimant can perform other

3

1  jobs that exist in substantial numbers in the
2  national economy. 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

3  Id.

Courts may set aside a decision of the ALJ if it is not supported by substantial evidence. 42 U.S.C. § 405(g); Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001). "Substantial evidence" is relevant evidence which a reasonable person might accept as adequate to support the ALJ's conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). In order to be "substantial," the evidence must amount to "more than a scintilla," but need not rise to the level of a preponderance. Holohan, 246 F.3d at 1201. Where the evidence could reasonably support either affirming or reversing the ALJ's decision, a court may not substitute its judgment for the ALJ's decision. Id.

## IV. DISCUSSION

At Claimant's hearing, the ALJ conceded that this was "a very close case." AR at 580. Ultimately, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act. Id. at 24.

### A. The ALJ's Five Step Inquiry

At step 1, the ALJ found that Mr. Maxwell's post-onset-date work as a graveyard planning counselor and an admissions representative did not constitute substantial gainful activity. Id. at 20. At step 2, the ALJ found that Claimant had medically determinable impairments diagnosed as degenerative disc disease of the lumbar spine, diverticulitis and moderate obesity, and that

4

Case 3:07-cv-05773-SC   Document 11   Filed 03/09/09   Page 5 of 16

they significantly limited Claimant's ability to perform basic work activities. Id. The ALJ found that Mr. Maxwell did not have a severe mental impairment that has more than a minimal effect on his ability to work because despite testimony about being depressed due to pain, Claimant never sought treatment from a mental health practitioner, and a March 2004 examination by a consultative psychologist, Dr. Lewis-Wintrode, produced a diagnosis of physical problems affecting psychological condition only. Id. At step 3, the ALJ found that Claimant suffers from no Listing level impairment.

Before going to step 4, the ALJ found that Mr. Maxwell has the residual functional capacity to perform light work, as defined at 20 C.F.R. § 404.1567(b), with the additional limitations of "sitting and standing at will, no work at heights, rare crouching, crawling and stooping, occasional stair climbing and reasonable access to restrooms." Id. at 20-21. Based on this residual functional capacity, the ALJ found, at step 4, that Mr. Maxwell is able to perform his past work as a graveyard planning counselor or admissions representative. Id. at 23.

**B.    The Parties' Contentions**

As a threshold matter, the Court disposes of Defendant's contention that the ALJ's November 21, 2000 decision created a presumption that Claimant continued to be able to work after that date. Cross-Motion at 3. The ALJ made a specific finding that Claimant was in a different age category than when his case was previously adjudicated. See AR at 23. That was a "changed circumstance" that precluded the application of a presumption that

5

1  Mr. Maxwell continued to be able to work. Id. The ALJ did not
2  rely on any presumptions when determining whether Mr. Maxwell was
3  disabled under the Social Security Act.
4  Claimant's contentions focus on the ALJ's determination that
5  Claimant had the residual functional capacity to perform his past
6  relevant work. Claimant contends that the ALJ did not properly
7  consider the opinion of Claimant's treating physician, the opinion
8  of the consultative psychologist, and the lay testimony of
9  Claimant and Ms. Holloway. Mot. at 6-19. The Court addresses
10 each of these contentions.

**C.  Dr. Matsumura's Opinion**

Dr. Matsumura was Claimant's treating physician at the West Oakland Health Center.[1] Claimant contends that the ALJ did not provide clear and convincing reasons for rejecting Dr. Matsumura's opinion. Mot. at 6-10. On February 10, 2005, Dr. Matsumura performed a medical assessment of Claimant. AR at 503-05. Dr. Matsumura found that Claimant was experiencing pain or muscle spasm, significant limitation of motion in spine, and appropriate radicular distribution of motor loss with muscle weakness. Id. at 504. Dr. Matsumura found that Claimant's concentration and memory were moderately restricted due to pain or side effects of medication, and Dr. Matsumura noted that Claimant "can't think when hurting." Id. Dr. Matsumura found that Claimant was experiencing spinal flares that would impair regular attendance at

---

[1] Both parties refer to the treating physician as "Dr. Matsumura." See Mot. at 6; Cross-Motion at 4. In the record, the treating physician's name is spelled "Dr. Matsumora." See AR at 503. The Court will use the spelling adopted by both parties.

work, and that the flares "completely prevent[] working." Id. at 505. According to Dr. Matsumura, Claimant is "completely, permanently disabled." Id.

The ALJ rejected Dr. Matsumura's opinion because he found that it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques. Id. at 21. While another doctor, Dr. Pon, had noted some decreased range of motion in Mr. Maxwell's back in December 2003, the ALJ determined that Dr. Matsumura's "own treatment records fail to describe any deterioration in the claimant's back after Dr. Pon's examination." Id. The ALJ found no significant positive objective findings related to Claimant's back in his treatment records from the West Oakland Medical Center. Id. The ALJ noted that the treatment records do not describe muscle spasm, significantly decreased range of motion in Claimant's spine, or motor loss with muscle weakness. Id.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. 20 C.F.R. § 404.1527(d); see also Reddick, 157 F.3d at 725. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. Reddick, 157 F.3d at 725. If the treating physician's opinion is contradicted by the opinions of other doctors, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the treating physician's opinion. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

7

Here, the ALJ provided clear and convincing reasons for rejecting Dr. Matsumura's opinion. Dr. Pon's medical report, based on an examination conducted in December 2003, noted that Claimant "was sitting in the waiting room comfortably. He was able to get off the chair and walk into the exam room." AR at 425. Dr. Pon noted that "Claimant ambulates with no ambulatory aid . . . He was sitting comfortably during the history taking. He was able to undress, bend over, take off his shoes normally and without discomfort." Id. Dr. Pon acknowledged that Claimant was suffering from residual low back pain due to his lumbar spine surgery in 1995, and noted some decreased range of motion in Claimant's back. Id. at 426. However, the ALJ correctly concluded that Dr. Pon's physical examination of Mr. Maxwell was otherwise unremarkable. Id. at 21.

The ALJ rejected Dr. Matsumura's findings of muscle spasm, significantly decreased range of motion in Claimant's spine, and motor loss with muscle weakness because these findings are inconsistent with Dr. Pon's findings, and there is nothing in the treatment records between these two examinations that supports Dr. Matsumura's finding of a significant change in Mr. Maxwell's physical condition. While the opinions of treating doctors should normally be given more weight, Social Security Regulation 96-2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." S.S.R. 96-2p available at 61 Fed. Reg. 34,490, 34,490-91 (July 2, 1996). Because there is nothing in the

treatment records, the ALJ found that Dr. Matsumura's opinion was not well-supported. AR at 21.

The Court, however, is troubled by the ALJ's statement that he would give Dr. Matsumura's opinion no deference. See id. The Social Security Regulations provide that even if not entitled to controlling weight, treating physician medical opinions are still entitled to deference. See S.S.R. 96-2p. However, despite the ALJ's statement, the record indicates that the ALJ gave some deference to Dr. Matsumura's opinion because the ALJ added limitations to Dr. Pon's determination of functional capacity. The ALJ added the limitations of "sitting and standing at will, no work at heights, rare crouching, crawling and stooping, occasional stair climbing and reasonable access to restrooms." AR at 20-21. The Court may not substitute its judgment for the ALJ's decision where the evidence could reasonably support either affirming or reversing the ALJ's decision. See Holohan, 246 F.3d at 1202. And perhaps most importantly, Claimant concedes the accuracy of the ALJ's determination that the treatment records do not describe the physical limitations noted by Dr. Matsumura. Mot. at 10.

Instead, Claimant's main contention is that the ALJ provided no explanation for rejecting Dr. Matsumura's statement that Claimant had a limitation of concentration and memory due to pain. Id. at 6, 9. Dr. Pon examined Claimant's physical limitations only and did not comment on any mental limitations due to pain. See AR at 424-27. Instead, Claimant was sent to a consultative psychologist, Dr. Lewis-Wintrode, to test whether there was a mental limitation. See AR at 452-59. Claimant contends that Dr.

Matsumura's finding that Claimant's concentration and memory were moderately restricted due to pain was supported by the findings of the consultative psychologist, and therefore should not have been rejected by the ALJ. Mot. at 8, 10.

Before turning to the findings of the consultative psychologist, the Court notes that there are problems with Claimant's reliance on Dr. Matsumura's statement that Claimant's concentration and memory were moderately restricted due to pain. First, Dr. Matsumura was talking about gastrointestinal pain, not back pain. See AR at 504. Second, the ALJ did take into account the fact that Mr. Maxwell had been treated for abdominal pain, noting that Mr. Maxwell underwent a sigmoid colectomy in August 2003, and that the treatment records indicate no significant findings of diverticulitis since the surgery. Id. at 21. Third, the ALJ gave some deference to Dr. Matsumura's findings regarding abdominal pain, noting that Dr. Matsumura did not impose any limitations due to abdominal pain. Id. at 22. Fourth, even if the ALJ accepted Dr. Matsumura's finding that Claimant's concentration and memory were moderately restricted due to pain, this finding by itself does not show that Claimant suffered from a severe psychological limitation rendering Claimant unable to perform all work for a continuous period of twelve months. Perhaps in recognition of this problem, Claimant contends that Dr. Matsumura's finding is buttressed by the findings of the consultative psychologist. See Mot. at 13.

**D.   Dr. Lewis-Wintrode's Opinion**

Dr. Lewis-Wintrode diagnosed Mr. Maxwell with "physical

10

1 problems affecting psychological condition." AR at 459. Dr.
2 Lewis-Wintrode noted that Claimant had a short attention span and
3 limited concentration, but he was able to focus on tasks and
4 complete them. Id. at 456. His verbal, performance and full-
5 scale IQ scores were in the mid-average range. Id. at 457. Mr.
6 Maxwell's auditory memory score was in the mid-borderline range.
7 Id. at 458. His visual and immediate memory was in the mid-
8 average range. Id. His working memory score was in the
9 borderline range. Id. Dr. Wintrode-Lewis offered the following
10 prognostic impressions:

> The claimant can avoid simple hazards. He is able to interact adequately with others as evidenced by his interaction with the examiner and clinical personnel. Psychologically, the claimant would have mild difficulties persisting independently at work-related activities due to some decreases in motivation, attention, and concentration. The claimant can follow one- and two-part instructions. The claimant can handle simple and complex tasks, but at a slower pace. He may have trouble keeping schedules. The claimant could interact with others on a daily basis.

19 Id. at 459.

20  The ALJ determined that Dr. Lewis-Wintrode's findings did not
21 erode the ALJ's determination that Claimant was able to perform
22 light work. Id. at 22. The ALJ noted that "Dr. Lewis-Wintrode
23 indicated that some of the limitations were on the basis of the
24 claimant's lack of motivation and not on the basis of mental or
25 physical impairment." Id. The ALJ concluded that even if he were
26 to credit Dr. Lewis-Wintrode's findings, "there is no basis for
27 finding that the claimant was limited in his capacity to meet the

11

mental demands of work for any continuous period of at least 12 months." Id.

The diagnosis of "physical problems affecting psychological condition" is somewhat ambiguous, but taken in conjunction with the consultative psychologist's prognostic impressions, the diagnosis indicates that Claimant may suffer from mild difficulties concentrating and paying attention to his work. Based on Dr. Lewis-Wintrode's opinion, the ALJ could legitimately conclude that Mr. Maxwell did not suffer from a severe mental impairment, and was not limited in his capacity to meet the mental demands of work for any continuous period of at least 12 months. Id. at 20, 22.

### E. Testimony of Mr. Maxwell and Ms. Holloway

At his hearing, Mr. Maxwell testified that he could not concentrate on his job as an admissions representative at a vocation school due to back pain and foot pain. Id. at 563. He testified that he had similar problems working as a graveyard planning counselor. Id. at 565. Ms. Holloway testified that Claimant was constantly complaining of pain, that he did not sleep because of pain, that his pain interfered with his ability to perform tasks like mowing the lawn and grocery shopping, that Claimant had trouble with time frames and remembering people's names, and that he had difficulty sitting in church and at meetings of the Masons. Id. at 554-58.

Once a claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms, and there is no affirmative

12

evidence suggesting malingering, an ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ must also provide reasons germane to each witness for disregarding the witness' testimony. Lewis, 236 F.3d at 511. The ALJ may discount lay testimony that conflicts with medical evidence. Id.

Here, the ALJ did not find the statements of Mr. Maxwell and Ms. Holloway convincing or credible to the extent that Claimant sought to establish that he was unable to perform all work for a continuous period of at least twelve months since his January 1, 2002 onset date. AR at 22. The ALJ provided three reasons for rejecting the testimony of Mr. Maxwell and Ms. Holloway. First, both Claimant and Ms. Holloway had reported elsewhere that Claimant could perform a variety of household chores. Id. Second, Claimant told a physician at Alta Bates Medical Center in May 2003 that he was riding a bicycle at the time he began experiencing abdominal pain. Id. Third, the treatment records do not describe a history of significant treatment for disabling back pain, and there is no evidence that Mr. Maxwell was prescribed strong pain medication. Id.

The ALJ rejected Ms. Holloway's testimony about the severity of Mr. Maxwell's psychological limitations based on a Function Report completed by Ms. Holloway on October 7, 2003. See id. at 369-77. Ms. Holloway stated that Mr. Maxwell prepares food twice weekly, can sometimes iron a shirt when not in pain, can sometimes wash dishes and do laundry, goes outside three or four times a

13

1  week, goes shopping twice a week, and goes to church twice a
2  month.  Id.  She also noted that Mr. Maxwell is depressed due to
3  his back pain, but overall, the impression created by this report
4  conflicts with Ms. Holloway's testimony that Claimant is in
5  constant pain.
6      The ALJ's reliance on Dr. Pon's report provides clear and
7  convincing reasons for rejecting Mr. Maxwell's claims about the
8  severity of his limitations due to pain.  Dr. Pon's report does
9  not paint a picture of a claimant in too much pain to concentrate
10 on the job requirements of an admissions representative or a
11 graveyard planning counselor.  Dr. Pon noted in December 2003 that
12 Claimant "was sitting in the waiting room comfortably.  He was
13 able to get off the chair and walk into the exam room."  Id. at
14 425.  Dr. Pon notes that "Claimant ambulates with no ambulatory
15 aid . . . He was sitting comfortably during the history taking.
16 He was able to undress, bend over, take off his shoes normally and
17 without discomfort."  Id.
18     The ALJ also relied on Mr. Maxwell's statement to a physician
19 in May 2003 that he was riding a bicycle at the time that he began
20 experiencing abdominal pain.  See id. at 413.  This behavior is
21 not consistent with Claimant's testimony that he cannot
22 concentrate or pay attention due to pain.  The ALJ's reliance on
23 the lack of evidence in the record that Mr. Maxwell had been
24 prescribed strong pain medications is less convincing due to Mr.
25 Maxwell's stomach and colon problems.  See id. at 561.
26 Nonetheless, the ALJ provided specific, clear and convincing
27 reasons for rejecting any suggestion in Mr. Maxwell's testimony

14

that his concentration or attention were so impaired due to back pain that he would be unable to return to work as a graveyard planning counselor or an admissions representative for a school.

### F. Vocational Expert Testimony

Claimant also disputes the testimony provided by the vocational expert at his hearing. Mot. at 19-21. Claimant contends the vocational expert's testimony is without evidentiary value because the hypothetical propounded to the vocational expert did not fully describe Mr. Maxwell's limitations. Id.

The vocational expert testified that Mr. Maxwell's past work as a graveyard planning counselor and admissions representative are performed at the sedentary to light exertional levels. AR at 570-71. The vocational expert testified that someone of the claimant's age, education and work experience, who has the capacity for light work with a sit/stand option at will, rare crouching, crawling or stooping, no work at heights and limited use of stairs could work as a graveyard planning counselor or an admissions representative. Id. at 571-72.

Claimant contends this testimony is of no value because it did not also include the limitation on concentration due to pain reported by Dr. Matsumura and Dr. Lewis-Wintrode. Mot. at 20. However, the ALJ did take note of the fact that Dr. Matsumura himself did not recommend any limitation due to abdominal pain. See AR at 22, 505. And Dr. Lewis-Wintrode's opinion can be plausibly read as suggesting that Claimant would suffer merely mild difficulties concentrating or paying attention to work-related duties. See AR at 459. Therefore, there was no basis for

15

the ALJ to add a psychological limitation to the hypothetical, and the vocational expert's testimony is not less valuable for omitting it.

**V.    CONCLUSION**

For the foregoing reasons, the Court DENIES Claimant's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: March 9, 2009

_____
UNITED STATES DISTRICT JUDGE